May it please the clerk. Count four of the indictment in this case accused Mr. Macedo of perjury for testimony at his mother's trial because he testified that she gave drug proceeds to him and he admitted in that trial that he was a drug trafficker rather than to Mr. Madrigal who was a different drug trafficker. The government didn't even argue the significance of this testimony, the materiality of this testimony, much less prove it and it's hardly obvious. A person who sells drugs as Mr. Macedo-Flores' mother did is equally guilty of selling drugs if she gives the drug proceeds to one drug trafficker rather than another. It is not readily inferable, merely based on who got the proceeds, that this had a capacity to influence the verdict. As a consequence, I would ask that this court overturn the conviction on count four and obviously vacate that sentence on count four and vacate the entire sentencing package because all sentences in a sentencing package are presumed to be related and grant a re-sentencing in the entire case. The government introduced the transcript of Mr. Macedo's prior testimony in this case and the testimony of an agent who observed that testimony in that case, but that evidence shed almost no light on the significance of that testimony to the ultimate issue in the case. The identity of the person to whom she gave drug proceeds did not make her any more or less guilty. It's not hard to imagine a factual context in which who got the drug proceeds might be dispositive to an outcome, but that's always true. It is every fact that a person might utter in a criminal proceeding has a capacity to affect the verdict in this trivial sense. If a robber is wearing blue shoes as opposed to black shoes on the day in question, that might be absolutely essential if it's in a factual context where other witnesses have said that the robber had blue shoes, but if all that a jury is told is that a robber denied wearing blue shoes on one day, we can't assume that the jury will infer, can readily infer, that that fact by itself is material to the proceedings. Similarly here, we know that the jury knew who Mr. Macedo said she gave drug proceeds to, but it's not readily apparent what difference that could have made. If there were evidence perhaps that she had greater knowledge that Magical was a drug trafficker than that Macedo was a drug trafficker himself, then that might be an arguable point, except that it's undisputed that Mr. Magical gave Mr. Macedo's mother the drugs in the first place. So if she knew that Mr. Magical was a drug dealer, then she was guilty as soon as she accepted the drugs, irrespective of who got the proceeds. Furthermore, there is evidence from in that testimony that she knew Mr. Macedo had a drug problem, and the jury certainly was clear that they were close to each other, Mr. Macedo and his mother, and so there's really no basis to conclude that she would have any greater knowledge that Mr. Magical was a drug dealer than that he was. Is there evidence in the record that he also was trying to say that the package, she didn't know that it contained drugs? There is. And so why isn't that enough? That's enough to establish the material. That fact might be material. That testimony, if he were indicted for saying she didn't know that there were drugs in that, then that demonstrates the materiality. But the whole thing is to show that she wasn't in the conspiracy. So who she gets the drugs from, and whether she's getting something from her son that she's not likely to question, and it's all part of her knowledge of the conspiracy, isn't it? Trying to make her as less culpable as possible. Well, at most, I think the jury could infer that that was his motivation, but it doesn't, it's not enough that he attempts to make a statement that's material. It has to actually have some potential impact on the outcome of the trial. And if she knew that Mr. Magical was a drug dealer, and that she was giving to Mr. Magical, then she was guilty as soon as she accepted the drugs from Mr. Magical, and certainly by the time that she turned him over to Detective Boston in the case. The government argued that, well, the jury could have thought, perhaps, that he, that she believed that these were jewelry or other household objects, and that he was asking her to dispose of those, and they were entirely innocent. But it seems to me that the problem with that is that Mr. Magical dropped off the package in the first place. And so if she's to believe that this is, these are innocent items that belong to Macedo, why is Mr. Magical dropping off the package in the first place? And furthermore, that's, that was a theory, that theory would have to be drawn essentially out of thin air from, by, by that jury to believe that, that she believed that there was something in this package, or that he was trying to say that it was something innocent in this package. That wasn't, that wasn't proven, and that wasn't even argued by the, by the government in the, in the case below. I think the case is not essentially effectively distinguishable from United States v. D'Amato, which stands for the proposition that the finder of fact must have some grounding in the underlying proceeding in order to infer the materiality of the statement. In that case, the defendant testified in Fourth Amendment hearings denying that the IRS told him to limit his information gathering and denying that it told him not to commit any crimes while he worked for them. It's not hard for a judge, and the trier in fact in that case was a judge, to imagine how those issues might be relevant to a Fourth Amendment issue, but because the government didn't offer any proof of the relationship between these issues and the proceedings, that evidence was found to be insufficient. Similarly here, there wasn't any evidence, there wasn't any proof about how the disposition of the drug proceeds affected any of the issues that were at issue in defendant's mother's trial in this case. With court's permission, I'll turn to the first issue that was raised in the brief, which is quantity entrapment. To decide this question, the court has to answer two questions. The first is, can the defendant be entrapped into committing an aggravated grade of an offense, specifically conspiracy to distribute more than 500 grams of cocaine and methamphetamine if he is concededly guilty of a lesser offense? And the second question is, does the evidence here merit that instruction? As to the first question, I want to distinguish between two very different kinds of claims. The first is that the defendant was entrapped into committing more culpable conduct under the guidelines or under 3553A, which I think is what's best known, what's best referred to as sentencing entrapment. That's true sentencing entrapment. A second kind of entrapment might be, is what I think is at issue here, which is entrapment as to the grade of an element of an aggravated offense as opposed to a lesser offense. And that's what's at issue here because 500, the quantity of drugs at issue in a conspiracy is an element of the offense. What is the overbearing and outrageous conduct? I wouldn't characterize the record that way. That standard, overbearing and outrageous conduct, in this case, is a standard that this Court has applied to cases involving entrapment under the guidelines. And there are several reasons that that standard shouldn't apply here. The first is that all of those cases, Stevens, Snow, Jones, Washington, Tremelling, those all involve review of a fact finder, specifically a judge's decision that the defendant was not entrapped. Yeah, but you're arguing entrapment. And the question, Judge Owell, I put to you, not trying to speak for her, but putting aside the cases, ordinarily when one yells entrapment, it does connote some overbearing, outrageous conduct. So the question, not so much distinguishing the other cases, but what about the conduct here even gets you into sort of a final point of what happened with the evidence? If it's ordinary conduct, I mean, how does it get to be entrapment, period? There certainly has to be inducement. But I think Tremelling stands, I mean, excuse me, Theogene stands for the proposition it doesn't have to be a unique and rare case. There does have to be inducement. The inducement, in this case, a jury could infer under the very liberal standards that are appropriate for denial of a jury instruction, a jury could infer that the repetitious solicitation of... But what about that gets it out of the heartland of a case in which the government has somebody wired and, you know, it's set up? I mean, what gets your argument out of the heartland of, yeah, the government's there, and, you know, is embracing this criminal milieu, watching it go on, et cetera, et cetera. So the government clearly is sort of involved. So but what about your argument gets it out of the heartland of law enforcement conduct vis-a-vis this crime? What's taking it out of that heartland to get you into trouble? Because you seem to just be describing the police were there, they set it up, you know, they let it happen. Well, there's two things that... Two answers to that. The first is that the repetitious solicitation has the capacity to wear down any resistance that there might be. So four grams of methamphetamine, four grams, and by the time it gets to the threshold, he's had a course of dealing with this officer, and when somebody's repeatedly solicited to sell you something, then it's harder to say no. If we were persuaded that you make a salient argument, articulate for me what you would say the holding would be vis-a-vis entrapment as to the greater offense. I mean, what would the holding be? What would we be saying? Don't tell me about the facts. I mean, tell me what would the holding be? What would be the principle? The holding would be when there is a conspiracy, when the defendant is charged with a conspiracy to commit a certain quantity, the jury is entitled to decide whether or not the defendant was entrapped as to that quantity, and specifically whether or not the intent to distribute that quantity originated with the government or the defendant. And he's entitled to that instruction when, not in cases that are unique and rare or outside of the heartland, but in any case where a reasonable jury could have a reasonable doubt about whether or not the government's conduct created a risk that he would distribute a greater amount than he was predisposed to. Is it your position, then, that overbearing and outrageous is not part of this type of entrapment? It is. That's your position? That's my position. Because you can't meet overbearing and outrageous, right? I'm not trying to. But the point I want to make about that is that might be a fine standard for a review of a fact finder's decision that this is not entrapment. So we can say it has to be overbearing and outrageous for us to overturn a judge's discretion to say this is not entrapment. But that's a very different matter to say that it's okay to take away from the jury the decision of whether or not this intent originated with the defendant or with the government. And none of the cases that we deal with here involve the denial of a jury instruction on review of a finding the defendant was not entrapped under the guidelines. I also want to just point out there is a special reason to entrust this question to the jury. The jury may or may not be the most accurate way to decide criminal cases, but it is a democratic institution, and it was intended as a check on the power of the executive. And so when the focus of review is the conduct of the executive in law enforcement, then there is a special reason to ensure that juries should be able to resolve the question of whether that conduct is likely to lead to a higher grade of offense among the defendant. Thank you. All right. Mr. Bates, thank you. You've reserved your vote of time. Mr. McKay for the government. May it please the court, Brian McKay on behalf of the United States. This court has spoken clearly and consistently that sentencing entrapment, if it exists, it requires one of two things. It requires either true entrapment or it requires outrageous and overbearing conduct by the government, which I hear Mr. Macedo saying this morning he's not attempting to meet. So what about true entrapment? We know we don't have true entrapment here because in the district court, Mr. Macedo conceded that he was predisposed to sell those quantities of drugs. True entrapment, of course, requires showing a lack of predisposition by the defendant. And I guess in a moment of candor, but to his credit, his trial attorney during the charge conference acknowledged that he couldn't make that argument with a straight face. There simply was not true entrapment here. What Mr. Macedo seems to be hanging his hat on is the Cortez decision out of the Ninth Circuit, but there are a couple of reasons that that decision can't and shouldn't apply here. First is that the part, at least, that he is relying on, the sort of government inflation standard, can't coexist with Stevens and Tremling and others where this court has said if sentencing entrapment exists, it requires true entrapment, which we don't have, or outrageous and overbearing conduct. To the extent that Cortez accepts something less than outrageous and overbearing conduct by the government, it simply can't coexist with this court's decisions. It also isn't a good guide for this particular case because we have to keep in mind that Cortez, it involved a drug quantity like this case did, but it's a very different case. Cortez and Briggs, the case that it relied on, were conspiracies to rob a fictional stash house and those drug quantities in those cases were fictional amounts that were unilaterally made up by the government. In Cortez, I believe, the stash house was supposed to contain 100 kilograms of cocaine. That was a number that the government agent created, unilaterally. That's not what we have here. This is a very different case in that this is an undercover drug investigation, as Judge Stewart pointed out, like many others that come before this court. The amounts that aggregated to the 500 grams for which Mr. Macedo was convicted were all negotiated, agreed to, and typically transacted by Mr. Macedo. There was no government inflation. There was no unilateral government action that took this case into the jury instruction in which declined to do so. I cannot, with perfect clarity, Judge Elrod, and that's because I think it's best encapsulated in United States v. Sedd, which is a Third Circuit case, where they collect the cases and say this particular court, I believe it's the Seventh Circuit, acknowledges sentencing manipulation but not entrapment. I may have that backwards. They collect them there and sort of the current state of things among the circuits. I would note that several of these are, as Mr. Page pointed out, several of these do go to 3553A factors instead of taking this issue to jury. Several of them are pre-Aleen. Many of them are even pre-Booker to the extent that they weigh on the 3553A factors. With respect to that, it's important to note that here Mr. Macedo did make both arguments, both to the jury, that they should not hold him responsible for the 500 gram thresholds because of unfair, in his mind, government conduct, and also at sentencing made the same arguments to the district judge. The district judge, after hearing the evidence at trial and seeing it at sentencing, made a specific finding that the government's conduct was appropriate in this investigation. Mr. Macedo has argued that the second issue materiality on one of his perjury convictions. I would point out that the very case that he relies on, United States v. D'Amato, this court noted that the government typically satisfies its materiality element in one of two ways, either by putting into evidence the transcript from the prior proceedings or by presenting a witness to those proceedings. And here we did both. Mr. Macedo's transcript was entered as an exhibit, and in that transcript, Mr. Macedo testified that his mother, Ostroberta, did not conspire with him to sell drugs and that she knew nothing about any drug involvement in the transaction that she did with an undercover officer. The government also presented the testimony of Agent Torres, who was present during Ostroberta's trial, and he testified to Mr. Macedo's jury exactly what Mr. Macedo testified to, that his mother was an unknowing facilitator of the conspiracy. Is it pertinent whether or not who she got the drugs from? Is that, do we have to parse it down to that level? No, I think this court has to find that there is sufficient evidence from which a jury, a reasonable juror, could infer that this testimony was material. And as I explained in the brief, it certainly was because what Mr. Macedo was doing was attempting to distance his mother to the full extent possible from any knowledge and any facts that could even suggest that she would be unreasonable in not knowing. So when he created this story that she didn't know, he created a story where all she did was go to the cabinet, Mr. Page pointed out that she received the drugs from Mr. Madrigal, but keep in mind, that's not what he was testifying to during Ostroberta's trial. He was testifying that she just went to the cabinet because, of course, the cabinet, according to him, was where he was, Madrigal, was told to put the drugs. So his testimony was that she just went to the cabinet, found a bag there, exchanged it with the guy who Macedo said would be coming for $4,200, and then gave the money to her son, to Mr. Macedo. That was the story, and that was certainly understand, that that was calculated to distance her to the full extent possible from any facts that would show, no, there was more to it. This was actually a drug deal. Mr. Macedo's jury certainly had sufficient evidence from which it could infer materiality. Mr. Page points out that the government never made any argument on that, in closing argument, but, of course, argument, as the jury is told, is not evidence. The government's proof of materiality doesn't fail merely because it wasn't argued to the jury. The jury certainly was sufficiently capable of understanding how the knowing, Ostroberta's Mr. Macedo's indictment read to the jury, and that issue was sufficiently explained both by Agent Torres and by Mr. Macedo's, the full understanding of his transcript, which was in the record. Mr. Macedo hasn't argued the third issue. I'm prepared to stand on the briefs on that, and with the sort of understanding that I believe that harmlessness is the most direct path to affirmance here on the third issue, but unless the court has any additional questions, I'm prepared to cede the rest of my time. All right. Thank you, sir. I believe we have your question. I think the answer to Judge Elrod's question about whether we have to parse down materiality to the particular fact rather than the testimony as a whole is, yes, we do. D'Amato says, I think, rather clearly that materiality is not evaluated by the testimony of the defendant as a whole, but rather by the particular segments of testimony that are alleged in the indictment to be false. So we can assume that the defendant had a design to convince the jury that his mother was an unknowing participant, but who got the money from the mysterious package that was given to the strange man didn't especially advance his design in doing that. And the mere fact that even if the court believed or hoped that it would advance that design, that's not what the materiality element is. The materiality element is that it has to, in fact, have a capacity under the factual circumstances of that case. So if you picked something not helpful to lie about and you're trying desperately to lie but you've done so poorly, then you can't be convicted of this? Yes. Yes, that's what the statute says. And it's because that's how it says that the fact must be material, not that the defendant must believe that it's material. And that's a way to limit felony liability to things that really have a capacity to disrupt federal proceedings. As to the couple points I want to make about the sentencing entrapment issue, Mr. McKay points out that Mr. Reyes, our trial counsel below, conceded that the predisposition issue. I want to point out under Theogene, predisposition and inducement are factors that go to one ultimate issue, which is where did the design, the criminal design, originate? So it's possible to concede that predisposition isn't an especially strong factor for us and also say that there's sufficient evidence to go to a jury because of the inducement in that case. The other point I want to make is that when the question is the grade of offense, whether the defendant was entrapped into committing a higher grade of offense, the focus on predisposition is necessarily a little bit lessened because the defendant, by hypothesis, is guilty and predisposed to commit the lesser offense. And so in those cases, it's appropriate to look more carefully at the government's intent to inflate the grade of offense and the extent of inducement in the case. Mr. McKay correctly points out that the Cortez case is a Stash House robbery and that the government has a great deal more control over the fictional quantities that are in Stash House than it does to the amount that the defendant actually distributes. But I think that's a jury question. The government's control over the quantity in a case like this is not as simple as telling the defendant the fictional quantity as it is in Stash House case. But there is testimony in the record that the government controlled the amount of drugs in each purchase. And yes, the defendant has to have the ability to access those amounts of drugs. But in the private market, in a world where these are not going to the government, he would also have to have the ability to market them. And a jury could conclude that the government providing the market is eliminating an obstacle to the defendant's ability to distribute, or even to conspire to distribute, this amount of drugs. The court has no other questions. That's all I have. Thank you, Mr. Page. Thank you, Mr. McKay, for your briefing and oral argument. The case will be submitted. We call the second case up.